# In the United States District court
# Southern district of New York

Emmanuel Obiagwu.

Plaintiff

V.

Jonathan Asturias
New York Police Department
City of New York
Dashawn Jennings (in his individual and official capacity),
Andrew Jaquez (in his individual and official Capacity
SGT Peter Rogers (in his individual and official capacity),
SGT Jessica Zhang (in his individual and official capacity),
SGT Gal Tal (in his individual and official capacity),
Thomas Arias (in his individual & official capacity),
Anthony Arcos (in his individual & official capacity),
John Doe 1 (in his individual and official capacity),
John Doe 2 (in his individual and official capacity),
Rammah Moharam (in his individual and official capacity),
Jesse Meyer (in his individual and official capacity),
Steve Espinal (in his individual and official capacity),
Braccia Russell (in his individual and official capacity),
Lt. John Doe 3 (in his individual and official capacity),
Cunningham (in his individual and official capacity),
Tanagretta (in her individual and official capacity),
Friend (in his individual and official capacity),
SGT Thomas Bay (in his individual and official capacity),
Thomas Mcneely (in his individual and official capacity),
SGT Lavelle (in his individual and official capacity),
Yates (in his individual and official capacity),

Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

## JURY

Plaintiff demands a trial by jury

## INTRODUCTION

1. Emmanuel Obiagwu brings this case against Defendants for negligent conduct resulting in the loss of his photography business and retaliation for seeking relief to his damages.

## PARTIES:

2. Plaintiff Emmanuel Obiagwu (hereinafter "Obiagwu" or "plaintiff") is a citizen of the state of New Jersey and the United States of America.
3. Defendant Jonathan Asturias (hereinafter "Asturias") is a police officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD2 at the time of the incident. He is sued in his individual and official capacity.
4. Defendant New York police department (hereinafter "NYPD") is a department within New York City acting under color of law. Tasked with the responsibility of upholding federal and state constitutional rights of the people and fighting crimes.
5. Defendant New York city (hereinafter "City" or "the city") is a municipal corporation organized and existing under and by virtue of the laws of the State of New York. At all times relevant hereto, Defendant City of New York acting through the New York City Police Department (NYPD) was responsible for the policies, practices, supervision, discipline, training, implementation and conduct of all NYPD matters and was responsible for the appointment of commissioner, retention and conduct of all NYPD personnel. In addition, at all times here relevant, defendant City of New York was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel follows the laws of the United States and the State of New York. Further, under the Charter of the City of New York, the City is responsible for the conduct of municipal agencies such as the New York City Police Department and Fire Department Of New York.

6. Defendant Dashawn Jennings (hereinafter Jennings) is a police officer of the NYPD operating in NewYork city acting under color of law. He is believed to be operating in TD2 at the time of the incident. He is sued in his individual and official capacity.

7. Defendant Andrew Jaquez (hereinafter "Jaquez") is an officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD2 at the time of the incident. He is sued in his individual capacity and official capacity.

8. Defendant Peter Rogers (hereinafter "Roger's") is a Sergeant officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD2 at the time of the incident. He is sued in his individual capacity and official

9. capacity.

10. Defendant Jessica Zhang is a Sergeant Officer of the NYPD operating in NewYork City acting under color of law. She is believed to be operating in TD2 at the time of the incident. She is sued in his individual capacity and official capacity.

11. Defendant Gal Tal is a Sergeant Officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD2 at the time of the incident. He is sued in his individual capacity and official capacity.

12. Defendant Thomas Arias (hereinafter "Arias") is an officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD2 at the time of the incident. He is sued in his individual capacity and official capacity.

13. Defendant Anthony Arcos is an officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD2 at the time of the incident. He is sued in his individual capacity and official capacity.

14. Defendant John Doe 1 (being a fictitious name of an unidentified person) is an officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD2 at the time

of the incident. He is sued in his individual capacity and official capacity. John Doe 1 conducted an arrest of Plaintiff along with Arcos in TD2.

15. Defendant John Doe 2 (being a fictitious name of an unidentified person) is an officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD2 at the time of the incident. He is sued in his individual capacity and official capacity. John Doe 2 conducted a search of Plaintiff post arrest along with Jaquez in TD2 and allowed Jaquez to sexually exploit Plaintiff while he was in handcuffs without intervening.
16. Defendant Rammah Moharam is an officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD2 at the time of the incident. He is sued in his individual capacity and official capacity.
17. Defendant Jesse Meyer is an officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD2 at the time of the incident. He is sued in his individual capacity and official capacity.
18. Defendant Steve Espinal is an officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD2 at the time of the incident. He is sued in his individual capacity and official capacity.
19. Defendant Braccia Russell is an officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD2 at the time of the incident. He is sued in his individual capacity and official capacity.
20. Defendant John Doe 3 (being a fictitious name of an unidentified person) is a Lieutenant officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD34 at the time of the incident. He is sued in his individual capacity and official capacity. John Doe 3 name is believed to be “Mango” and he conducted an arrest of Plaintiff along with Braccia Russell TD34.

21. Cunningham is an officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in the TRT at the time of the incident. He is sued in his individual capacity and official capacity.

22. Defendant Tanagretta is an officer of the NYPD operating in NewYork City acting under color of law. She is believed to be operating in the TRT at the time of the incident. She is sued in his individual capacity and official capacity.

23. Defendant Friend is an officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TRT at the time of the incident. He is sued in his individual capacity and official capacity.

24. Defendant Thomas Bay is a Sergeant officer of the NYPD operating in NewYork City acting under color of law. She is believed to be operating in the TRT at the time of the incident. She is sued in her individual capacity and official capacity.

25. Defendant Thomas McNeely is an officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in the TRT at the time of the incident. She is sued in his individual capacity and official capacity.

26. Defendant Lavelle is a sergeant officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in TD20 at the time of the incident. He is sued in his individual capacity and official capacity.

27. Defendant Yates is an officer of the NYPD operating in NewYork City acting under color of law. He is believed to be operating in the TRT at the time of the incident. He is sued in his individual capacity and official capacity.

## JURISDICTION AND VENUE

28. This court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1343

29. This Court has supplemental jurisdiction over the following state law claims pursuant to 28 U.S.C. §1367 in relation to the federal claims that it forms part of the same case under Article III of the U.S. Constitution.

30. This venue is proper in this District under 28 U.S.C. § 1391(b)(2). All of the events giving rise to this Complaint occurred within this District.

31. At all times relevant hereto, Defendants resided in the United States and resident of the State of NewYork.

**Administrative Remedies**

32. Plaintiff caused Notices of claims to be issued upon the comptroller's office within 90 days of incidents.

33. Plaintiff exhausted every possibility and made numerous attempts to recover his possessions from defendants or a fair compensation for damages but failed. Plaintiff wrote and sent physical and digital demand letters to City's Law Department on multiple occasions with no responses

**FACTUAL BACKGROUND.**

34. **On or about May 8th, 2025 12:20PM** Defendant Jonathan Asturias and Dashawn Jennings were onboard a MTA train car adjacent to another train car Plaintiff was in.

35. Plaintiff stood at the rear end of the train car looking through the glass windows into the other train car and flicked off the officers.

36. Asturias standing along with Jennings in the other train car hand gestured Plaintiff to come over from his train car into theirs.

37. Plaintiff in response opened the connecting train door in an attempt to comply with Asturias request to come over to the other train car. Plaintiff hesitated to cross over the gangway/vestibule and immediately closed the door.

38. Upon the train coming to a stop at the next station Jennings and Asturias exited their train car and went into the train car Plaintiff rode and immediately dragged him out of the train, placed him in handcuffs and slammed him against the wall and issued a ticket for suspicion of crossing train cars.

39. Plaintiff was forced out of the train station with excessive force and trespassed. Plaintiff was free to leave afterwards.

40. Later that evening Plaintiff got into a Southbound A train at Penn station, Asturias and Jennings were on the train and upon seeing Plaintiff they exited the train to leave but turned around and pulled Plaintiff out of the train and arrested him for felony assault on police officers.

41. Plaintiff was assaulted and struck multiple times in the stomach by Asturias while in handcuffs.

42. Plaintiff was denied food and water.

43. After being released plaintiff returned to pickup property and was arrested a 2nd time without probable cause.

44. After being released the second time, plaintiff was arrested a 3rd time without probable cause.

45. After being released the third time Plaintiff was threatened with a fourth arrest.

**46. On or about July 1, 2025 2:00Am.** Plaintiff was riding the train while laying down on the seat along with another passenger (hereinafter ‘anonymous 1’) who was also laying down on the seat in the exact same manner as Plaintiff. Plaintiff is African American, anonymous 1 is of white European descent.

47. Defendants Jaquez, Moharam, Espinal, Meyer and Zhang (collectively ‘West 4 defendants’) stopped the train and ordered both Plaintiff and the anonymous 1 passenger out of the train and immediately anonymous 1 was told to leave freely without providing any identification or issuing tickets. HOWEVER, at the same moment Plaintiff was physically being moved aggressively without resisting and forced to move to a certain direction where they insisted he must provide identification for prosecution of a violation or he would be arrested.

48. Defendants Jaquez, Moharam, Espinal, Meyer and Zhang (collectively ‘West 4 defendants’) enforced the law on Plaintiff but not on the white passenger. Defendants showed no interest to issue a ticket or at

the very list run a warrant check on the white passenger. Plaintiff was issued criminal citation the white passenger was not.

**49. On or about September 16, 2025 approximately 9am at Coney Island F-train station.**

50. Defendants Russell, LT. John Doe 3 and two non-party officers of TD34 stopped Plaintiff on F train Platform and demanded an ID, plaintiff did not physically possess an ID card so he provided an official document issued by the city of New York with his full name written on it, defendants claimed they couldn't read what was written even though it was eligible.

51. Furthermore, Plaintiff volunteered to help them clarify the spellings by re-writing his entire name on a clean piece of paper.

52. Officers provided Plaintiff a pen and piece of paper which Plaintiff wrote down his name very clearly. Rather than use the piece of paper which sufficiently provides plaintiff's identity to run his name LT. Doe 3 snatched the piece of paper and without looking at it throws it into his pockets and asserted that unless Plaintiff verbalized his name with his voice he will be arrested.

53. Lt. Doe 3 did not allow other officers to look at the paper with Plaintiff's identity in effort to take a route to arrest Plaintiff for obstruction.

54. Note that Plaintiff remained mute and communicated with hand gestures the entire incident which a reasonable person would assume he was unable to speak but Lt. Doe 3 insisted Plaintiff must speak with voice or go to jail. Defendants did not know Plaintiff prior to this incident and had no reason to believe Plaintiff was capable of speaking.

55. At TD34 a sergeant took a look at the document initially provided by plaintiff and immediately read out the name without any problems which proves Plaintiff sufficiently identified himself twice.

56. **On or about July 2, 2025,** Defendants Cunningham, Tanagretta and Friend were at the Union turnpike station when they saw Plaintiff and engaged in a conversation with him. The officers made no attempt to detain or arrest Plaintiff until he pointed his middle finger at them and asked for their business card and Plaintiff was subdued and placed under arrest immediately after.

57. Later on that afternoon Plaintiff tried getting onboard an E train when Defendants quickly stepped in front of him to cut him off and stop him from getting on the train. Plaintiff attempted to move to the side away from the officers and Friend stepped in his way again pushing him. Friend used his left hand to strike Plaintiff's stomach and shoved him back.

58. Plaintiff was not accused of any crime and wrongfully arrested.

**59. On or about June 3, 2025 similar to the July 1st incident,** Plaintiff was riding the train while laying down on the seat along with another passenger (hereinafter 'anonymous 2') who was also laying down on the seat in the exact same manner as Plaintiff. Plaintiff is African American, anonymous 2 is of white European descent.

**60.** Defendants Yates, Mcneely and Sgt Bay ordered Plaintiff and anonymous 2 out of the train and once again similar to July 1st incident, the officers immediately dismissed anonymous 2 and allowed him to get back on the train without running his name or taking any disciplinary action for his violation. Plaintiff on the other hand was treated aggressively and ordered to identify himself so they could run his name in hopes of finding criminals but apparently anonymous 2 was too white to be a criminal in the eyes of defendants.

61. Defendants ran a warrant search on Plaintiff with no warrant results and in disappointment they ordered him to completely exit the station not allowing him to get back on the train while anonymous 2 was allowed to get back on the train after allegedly committing the exact same violation as Plaintiff who is black.

62. Plaintiff complied and exited the train platform and was at the exit gate when defendants approached him again and placed him under arrest because he wasn't moving fast enough to their liking. Plaintiff was jailed without food and water for 2 days and Sgt lavelle threatened to put Plaintiff's head through the wall because he requested to be transported to the hospital.

## CLAIMS FOR RELIEF

**42 U.S.C. § 1983 - First Amendment Violations of Free Speech, retaliation for exercising and Prior restraint**

(Against City,

63. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.
64. ALL ACTIONS BY ALL DEFENDANTS ORIGINATED IN RETALIATION AS A RESULT OF PLAINTIFF'S
65. Asturias and Jennings pulled Plaintiff out of the train in retaliation for explicit hand gestures which Plaintiff had the right to express as free speech.
66. Asturias and Jennings pulled Plaintiff out of the station as a direct response to cursing and teasing them
67. Asturias and Jennings arrested Plaintiff the second time for exercising his rights to record them on a South bound A train.
68. Asturias punched Plaintiff repeatedly in retaliation for informing the radio dispatcher that he was being unjustly taken into custody.
69. Sgt Rogers and Jaquez wrongfully arrested Plaintiff for redressing his grievances and arguing his rights to retrieve his property.
70. Arcos , John Doe 1 and Zhang retaliated against Plaintiff and arrested him for expressing his rights to video record police activity.
71. During all 3 imprisonment by TD2 defendants Plaintiff was not given food and water in retaliation for redressing his grievances and informing them he was going to sue them.
72. TD2 Defendants took possession of Plaintiff media storage devices with the intention to prevent him from publishing protected press activity and to attempt to stop him from posting the videos of Asturias committing fraud.

73. John Doe 3 and Russell arrested Plaintiff in retaliation for speaking in Sign language after Plaintiff already identified himself.

74. John Doe 3 and Russell arrested Plaintiff for exercising his right to not [verbally] speak or engage in conversation he did not wish to.

75. Defendants Cunningham, Tanagretta and Friend arrested Plaintiff for free speech they didn't like.

76. Defendants Cunningham, Tanagretta and Friend arrested Plaintiff in retaliation for giving them the middle finger when they would've otherwise not arrested him until he flicked them off.

77. Defendants Cunningham, Tanagretta and Friend attempted to prevent Plaintiff from getting on the train in retaliation for recording them, calling them names and flicking them off.

78. Plaintiff at all times was exercising rights granted by the first amendment of the constitution of the United States by performing acts including, exercising free speech, protesting, redressing his grievances and exercising his right to free press.

79. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**42 U.S.C. § 1983 - Fourth Amendment Violations Involving Unlawful Seizure of person and property. Deprivation of property and liberty..**

(Against City, individually named officers. )

80. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

81. Asturias and Jennings wrongfully detained and arrested Plaintiff on two occasions.

82. Sgt Rogers and Jaquez wrongfully arrested Plaintiff

83. Arcos and John Doe 1 wrongfully arrested Plaintiff.

84. Asturias and Jennings arrested Plaintiff for utilizing public property.

85. Sergeant Zhang, Sergeant Tal, Sergeant Rogers and other supervisors watched the body worn camera footage and doubled down on the false charges and continued to imprison Plaintiff.
86. Plaintiff was wrongfully arrested 4 times back to back by TD2 Defendants.
87. TD2 defendants took possession of Plaintiff properties and refused to return them such as an SSD, SD card and his bank Debit Card.
88. Defendants Jaquez, Moharam, Espinal, Meyer and Zhang (collectively 'West 4 defendants') detained plaintiff for discriminatory and retaliatory purposes when they had no intention on detaining or enforcing the law on others who committed the same violation.
89. John Doe 3 and Russell violated Plaintiff right to be free by arresting him constitutional protected activities
90. John Doe 3 and Russell arrested Plaintiff without the commission of obstruction.
91. John Doe 3 and Russell arrested Plaintiff against his will and had ulterior personal motives to arrest Plaintiff for not [verbally] speaking to them.
92. Plaintiff identified himself to John Doe 3 and Russell dispelling any allegations of obstruction but he was still arrested.
93. Defendants Cunningham, Tanagretta and Friend placed plaintiff under arrest without commission of a crime.
94. Defendants Cunningham, Tanagretta and Friend seized Plaintiff as a response to protected speech.
95. Defendants Cunningham, Tanagretta and Friend denied Plaintiff liberty.
96. Defendants Yates, Mcneely and Sgt Bay wrongfully arrested Plaintiff when others who committed the same violation were not detained or arrested
97. Defendants Yates, Mcneely and Sgt Bay arrested Plaintiff when he was already complying with the order to leave and at the exit gate.
98. Defendants Yates, Mcneely and Sgt Bay arrested Plaintiff without reasonable suspicion of additional crime after he was already free to leave and exiting

99. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**42 U.S.C. § 1983 - Fourth Amendment Violations; Failure To Intervene**

Against City, John Doe 2, Jennings, Rogers

100. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

101. Jennings stood by and supported Asturias' decision to falsely accuse and charge Plaintiff for assault on officer. Jennings's failed to intervene and allowed Asturias' will to be imposed. Jennings failed to report Asturias' behavior to supervisors.

102. Sgt Rogers and John Doe 2 did not intervene as Jaquez sexually assaulted Plaintiff

103. John Doe 2 stood by and made no attempt to stop Jacquez from sexually assaulting Plaintiff.

104. John Doe 2 agreed to Jaquez's order to take off his BWC and place it outside the cell to not capture the sexual assault on Plaintiff.

105. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**42 U.S.C §1981 Race Discrimination**

(Against City,

106. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

107. Tal referred to Plaintiff who is an African American as "An animal" and said he looked and behaved like "an animal."

108. Defendants Jaquez, Moharam, Espinal, Meyer and Zhang (collectively 'West 4 defendants') detained plaintiff due to racial discrimination and first amendment retaliatory purposes when they had no intention on detaining or enforcing the law on others who committed the same violation.

109. Defendants Yates, Mcneely and Sgt Bay racially profiled Plaintiff and assumed he would have a warrant while assuming anonymous 2 who is white must not be a criminal and therefore free to leave.

110. Defendants Yates, Mcneely and Sgt Bay singled out Plaintiff who was the only black person committing a violation and allowed whites committing the same violation to go unpunished.

111. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**Supervisory and Municipal Liability**

(Against City,

112. Seargents Zhange, Seargent Rogers and other supervisors at TD 2 knew Plaintiff was held on false charges and took to actions to halt the wrongful imprisonment

113. Seargent Zhang, Seargent Rogers and other supervisors watched the body work camera footage and doubled down on the false charges and continued to prosecute Plaintiff.

114. Seargent Change admitted to watching the BWC and chose to keep Plaintiff in custody.

115. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**Malicious prosecution**

Against City,

116. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

117. Asturias and Jennings utilized an entrapment technique to make Plaintiff commit a violation he would not have committed absent their influence and directions and prosecuted him for it.

118. Asturias and Jennings with the authorization of Sgt Tal and Sgt Zhang intentionally filed false statements and paperwork and pushed it to the prosecutor office to be used against Plaintiff.

119. Seargent Zhang, Seargent Tal, Seargent Rogers and other supervisors watched the body worn camera footage and doubled down on the false charges and continued to prosecute Plaintiff.

120. Defendants Jaquez, Moharam, Espinal, Meyer and Zhang (collectively 'West 4 defendants') detained plaintiff due to racial discrimination and first amendment retaliatory purposes when they had no intention on detaining or enforcing the law on others who committed the same violation.

121. John Doe 3 and Russell made sworn false police reports and forwarded it to the prosecutors office to maliciously prosecute Plaintiff.

122. John Doe 3 and Russell added false charges to increase the punishment and likelihood Plaintiff is prosecuted.

123. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**42 U.S.C. § 1983 - Fourteenth Amendment Violations of Due Process and equal protection**

(Against City, Zhang, Tal, Asturias, Jennings, Rodgers, Jacquez, Arcos,

124. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

125. Plaintiff was not provided equal protection of the law due to his race.

126. Tal referred to Plaintiff who is an African American as "An animal" and said he looked and behaved like "an animal."

127. Plaintiff was wrongfully accused of crimes he never committed by Asturias, Jennings, Rogers, Jaquez, Arcos, Arias and Zhang.

128. Plaintiff was imprisoned for a total of three days without food and water by TD2 defendants

129. Plaintiff was prosecuted without due process.

130. Plaintiff was denied rights to be free and enjoy liberty.

131. Defendant City, Tal, Zhang, Rogers continued to maliciously prosecute Plaintiff for secondary charges while aware the initial charges were fraudulent.

132. Defendants did not provide equal rights to plaintiff which were provided to people of other race.

133. Defendants bought bottle water and snacks for all detainees except for Plaintiff.

134. Defendant Zhang and Tal told Plaintiff if he wants something to eat or drink he must ask his arresting officer (Asturias) who had gone home for the day. Plaintiff informed Zhang and Tal that Asturias went home but took no action to feed Plaintiff.

135. Defendants Jaquez, Moharam, Espinal, Meyer and Zhang (collectively 'West 4 defendants') detained plaintiff due to racial discrimination and first amendment retaliatory purposes when they had no intention of detaining or enforcing the law on others who committed the same violation.

136. Defendants LT. John Doe 3 and Russell arrested Plaintiff without due process and without commission of a crime.

137. Defendants LT. John Doe 3 and Russell violated plaintiff's right to liberty

138. Defendants LT. John Doe 3 and Russell did not provide Plaintiff equal protection.

139. Defendants Cunningham, Tanagretta and Friend arrested Plaintiff without Due process

140. Defendants Cunningham, Tanagretta and Friend denied Plaintiff his rights to be free from unreasonable stop and seizures.

141. Defendants Cunningham, Tanagretta and Friend attempted to deny Plaintiff public transportation in retaliation for his speech.

142. Defendants Cunningham, Tanagretta and Friend arrested Plaintiff without suspicion of a crime.

143. Defendants Yates, Mcneely and Sgt Bay racially profiled Plaintiff and assumed he would have a warrant while assuming anonymous 2 who is white must not be a criminal and therefore free to leave.

144. Defendants Yates, Mcneely and Sgt Bay singled out Plaintiff who was the only black person committing a violation and allowed whites committing the same violation to go unpunished.

145. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

## Fraud

(Against City, Asturias and Jennings)

146. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

147. Asturias and Jennings committed fraud to fake an 'assault on Officer' incident in order to get paid time off

148. Asturias and Jennings contacted Dispatch and supervisors and passed along false information to get Plaintiff criminally charged with Felonies

149. Asturias and Jennings contacted Dispatch and supervisors and passed along false information that Asturias had been injured by Plaintiff in order to go to hospital at the beginning of his job shift and get the rest of the day and following weeks off while being paid.

150. Plaintiff suffered loss of liberty, physical force, starvation, malicious prosecution and more injustice as a result of the fraudulent claims by Asturias and Jennings.

151. Defendants committed acts that rose to the level of extreme or outrageous conduct that goes beyond the possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community.

152. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**Negligence**

Against City.

153. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

154. City failed to properly Train Asturias

155. Defendant "City" was careless and reckless in hiring, retaining, training, assigning, failing to retrain, in monitoring, supervising and promoting as and for its employees, defendants "Asturias", "Lt. John Doe 3", "Jaquez" "Arcos" "Sgt Roger" in that said employee(s) lacked the experience, deportment and ability to be employed by the defendants in the capacity in which they were utilized, i.e. as police officers; in that the defendant, "City" failed to exercise due care and caution in its hiring and promoting practices;

156. City hired and was responsible for the training and promotion of Lt John Doe 3 who arrested Plaintiff for not verbally speaking with the possibility that Plaintiff might not have been able to which would violate the Americans with disabilities act.

157. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**Intentional use of force.**

(Against City  Asturias, Jennings)

158. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

159. Asturias and Jennings slammed Plaintiff against the wall at 23rd street station.

160. Asturias and Jennings used force to handcuff Plaintiff and dangerously slammed him against a balcony while he was already handcuffed at Penn Station.

161. Asturias punched Plaintiff repeatedly in his stomach and pinched his biceps till it turned pink while Plaintiff was handcuffed and not resisting.

162. Defendants committed acts that rose to the level of extreme or outrageous conduct that goes beyond the possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community.

163. Defendants LT. John Doe 3 and Russell used force by handcuffing a person not reasonably suspected of committing a crime.

164. Defendants Cunningham, Tanagretta and Friend used force on Plaintiff for personal reasons not supported by enforcement of law.

165. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**NY state law: Assault and battery.**

(Against City, Asturias, Jennings)

166. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

167. Asturias punched Plaintiff repeatedly in his stomach and pinched his biceps till it turned purple while Plaintiff was handcuffed and not resisting.

168. Asturias and Jennings slammed Plaintiff against a balcony and held his upper body hanging over to cause fear of great bodily harm or death. Plaintiff was bent over the balcony so far that his heels were no longer touching the ground.

169. Asturias and Jennings used the handcuffs to inflict pain on plaintiff by making it so tight that he had to tilt his entire upper body to side to somewhat reduce the discomfort.

170. Defendant Friend struck plaintiff multiple times in order to prevent him from getting on the train.

171. Defendant Friend pushed Plaintiff and used his body weight to lean against Plaintiff in an unwanted manner and shoved Plaintiff.

172. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**NY state law: Sexual Assault.**

Against (Andrew Jaquez)

173. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

174. Jaquez used the front of his hand to rub over the exterior of Plaintiff's frontal area.

175. Jaquez then placed his hands inside Plaintiff's pants and squeezed Plaintiff's frontal area with the front of his hands and rubbed it.

176. Plaintiff exclaimed to bring attention to the inappropriate conduct of Jaquez and Sgt Roger instructed Jaquez to take Plaintiff to the back to continue where Jaquez then used the front of both hands to squeeze both of Plaintiff's buttocks in a sexual manner four times even after Plaintiff jumped on a bench to get out of reach of Jaquez. Jaquez moved closer and squeezed Plaintiff buttocks again and ordered John Doe 2 to take off his BWC and place it outside the holding cell so it does not capture further assault on Plaintiff.

177. Plaintiff was in handcuffs at all times and was unable to prevent such conduct.

178. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**NY state law: Threats to do violence & bodily harm**

(Against)

179. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

180. Lavelle threatened to "put [plaintiff's] head through the wall."

181. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**NY state law: Harrasment.**

(Against

182. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

183. Defendants Cunningham, Tanagretta and Friend harassed plaintiff for his speech and attempted to deny him public transportation.

184. Defendant Friend used his body to repeatedly block plaintiff's free movement and repeatedly pushed him.

185. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**NY law: conversion & theft.**

(Against)

186. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

187. TD2 Defendants took possession of Plaintiff properties including his Debit card, Sandisk SSD, Sandisk SD card and more items and toll this day have not returned such properties.

188. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**NY law; Hate speech, racism and discrimination.**

(Against )

189. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

190. Tal referred to Plaintiff who is an African American as “An animal” and said he looked and behaved like “an animal.”

191. Defendants Jaquez, Moharam, Espinal, Meyer and Zhang (collectively ‘West 4 defendants’) detained plaintiff due to racial discrimination and first amendment retaliatory purposes when they had no intention of detaining or enforcing the law on others who committed the same violation.

192. Defendants Yates, Mcneely and Sgt Bay racially profiled Plaintiff and assumed he would have a warrant while assuming anonymous 2 who is white must not be a criminal and therefore free to leave.

193. Defendants Yates, Mcneely and Sgt Bay singled out Plaintiff who was the only black person committing a violation and allowed whites committing the same violation to go unpunished.

194. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**PRAYER FOR RELIEF**

1.Judgment for compensatory damages; including damages for emotional distress, loss of property, loss of revenue, humiliation, loss of enjoyment of life and other pain and suffering on all claims allowed by law in an amount no less $5,500,000.

2. Cost of suit; attorneys' fees and the costs associated with this action under 42 U.S.C. §1988, including expert witness fees, on all claims allowed by law

3. Plaintiffs prays that this court impanel a lawful jury to hear this case.

**PUNITIVE DAMAGE**

The actions of Defendants as described above were carried out in bad faith and with malice, and done with intent to cause injury. Punitive damages should be awarded to punish Defendants and to deter them, as well as other similarly-situated individuals, from engaging in similar conduct in the future, in a punitive amount no less than $2,750,000.

Submitted by;

/s/ Emmanuel Obiagwu.
908-708-4090
EmmanuelObiagwu@gmail.com

May 5, 2026